IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORETHA BANKS and ANTOINE MASSIE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 18 C 03358 |
| LOANCARE LLC and FIRST ALLEGIANCE PROPERTY SERVICES, INC., | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Doretha Banks and Antoine Massie bring this action complaining of the circumstances surrounding their eviction in 2017 and the alleged conversion of their personal property during their eviction. They assert claims against the defendants, LoanCare LLC and First Allegiance Property Services, Inc., premised on a variety of legal theories including breach of contract, fraud, conversion, intentional infliction of emotional distress, and violations of the Fair Housing Act ("FHA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Both defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted. The Court agrees that the plaintiffs have failed to state a plausible claim for relief, and therefore defendants' motions are granted.

### BACKGROUND[1]

At issue is the plaintiffs' eviction from 5214 Southwind Drive, Richton Park, Illinois. In

---

[1] As with all motions to dismiss, the Court must accept all well-pleaded facts in the Amended Complaint as true and draw all permissible inferences in favor of the plaintiffs. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

2009, the plaintiffs, who are married, entered into a mortgage loan agreement related to the property. GMAC Mortgage LLC, the lender, foreclosed on the mortgage in 2011. First Am. Compl. ¶¶ 1-2,² ECF No. 6. The Cook County Circuit Court entered an order on January 4, 2013 approving the report of sale and distribution, confirming the sale of the property, and approving an order of possession. Mem. Supp. LoanCare's Mot. Dismiss Ex. D, ECF No. 25. Ms. Banks' appeal from the foreclosure action was dismissed on February 29, 2017. First Am. Compl. ¶ 2, ECF No. 6. The order of possession was not enforced during the pendency of the appeal and the plaintiffs remained in possession of the property when their appeal of the foreclosure proceedings was denied.

In April 2017, a man came to take photographs of the property. He said that he was working on behalf of LoanCare and told the plaintiffs that they should contact LoanCare regarding the property. *Id.* ¶¶ 4-5. When Ms. Banks telephoned LoanCare, she was advised that she could modify the loan related to the property. She received and completed a loss mitigation package from LoanCare and was later informed by telephone that she had been approved for loss mitigation through a loan modification. *Id.* ¶¶ 9-13. The representative she spoke with informed Ms. Banks that the first payment under the loan modification would constitute her acceptance of the modification. Ms. Banks returned a signed FHA Trial Plan Agreement to LoanCare and made the first of three payments in June 2017. *Id.* ¶¶ 19-20.

---

² The Amended Complaint renumbers the paragraphs in each section delineated by a new heading (in other words, each section begins anew with paragraph "1"). This approach is guaranteed to sow confusion; paragraph numbers in complaints should be numbered sequentially throughout the entire document. When Rule 8(b) instructs plaintiffs to "state . . . claims or defenses in numbered paragraphs," it doesn't mean to use the same number repeatedly. If the plaintiffs file an amended complaint, all paragraphs should be numbered sequentially. For now, unless otherwise indicated, any citations to the Amended Complaint refer to the paragraphs as numbered in the "Factual Allegations" section of the Amended Complaint.

On August 10, 2017, the Sheriff of Cook County evicted the plaintiffs from the property. According to the Amended Complaint, the possessory order that the Sheriff displayed was over a year old. *Id.* ¶ 27. The Sheriff stated that he would not remove any items from the property but had orders to lock the plaintiffs out of the property; however, the Sheriff did not lock the property, and Mr. Massie reentered. *Id.* ¶¶ 25, 28. On August 16, 2017, two Richton Park police officers arrested Mr. Massie for trespassing. While Mr. Massie was being arrested, six individuals removed the plaintiffs' personal property from the home to the front yard and the garage. The Amended Complaint alleges that these individuals were "from Allegiance." *Id.* ¶ 34. In removing the plaintiffs' property, the First Allegiance workers damaged and destroyed the plaintiffs' furnishings. The plaintiffs later discovered, while packing their belongings into a rental truck, that several items of their personal property were missing, including $4,600 in cash, several watches and jewelry items, and four of their children's iPads. *Id.* ¶ 38.

After relocating to a hotel, the plaintiffs contacted both defendants. A LoanCare representative informed the plaintiffs that LoanCare was not honoring the loan modification agreement, *id.* ¶ 42, and First Allegiance informed the plaintiffs that it had "hired Maurice Johnson to evict the Plaintiffs from the Property at the direction of Defendant LoanCare," *id.* ¶ 44. The First Allegiance representative told Ms. Banks that she "had no knowledge of the other people who evicted the Plaintiffs and their person[al] property from the Property" and that "she did not know if she could help because Allegiance did not know the workers." *Id.* ¶¶ 45-46.

Plaintiffs bring a variety of claims (including for breach of contract, racial and sex discrimination in violation of the FHA, intentional infliction of emotional distress, and conversion) against LoanCare regarding the loan modification process and their subsequent eviction, and conversion claims against First Allegiance, which allegedly hired the individuals who removed the

plaintiffs' personal property from the home, regarding their damaged and missing personal property. Defendants each filed a motion to dismiss for failure to state a claim.

## DISCUSSION

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the complaint fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680-82. When resolving a Rule 12(b)(6) motion, a court may consider only allegations in the complaint, documents attached to the complaint, and documents that are both referred to in the complaint and central to its claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In this case, the plaintiffs' claims are all premised on the same core set of facts relating to their August 2017 eviction from the property, as evidenced by the integration of all of the factual allegations into every count of the Amended Complaint. Ultimately, the injuries complained of derive from the plaintiffs' eviction from the home, both by the Cook County Sheriff on August 10 and by Richton Park police on August 16, and the subsequent damage to their personal property by Maurice Johnson and several other individuals. But because the fact of the eviction was lawful, and because the plaintiffs do not allege sufficient facts to show an agency relationship between the individuals that removed their belongings and the defendants that would make the manner of eviction unlawful with respect to the defendants, none of the plaintiffs' legal theories give rise to a plausible claim for relief.

The plaintiffs' principal argument with respect to the injuries caused by the eviction is that the eviction was wrongful because they had entered into a loan modification agreement with

4

LoanCare in mid-2017. According to the plaintiffs, the loan modification process led them to believe that they would not be evicted from their home, giving rise to a variety of claims for breach of contract, violation of the duty of good faith and fair dealing, common law fraud, specific performance, procedural and substantive unconscionability, and violations of the ICFA. *See, e.g.*, First Am. Compl. Count I ¶ 9, ECF No. 6 ("The LoanCare Defendants misled the Plaintiffs to believe Plaintiffs would not lose the Property and certainly would not be evicted from the Property if Banks entered into and complied with the Agreement."). Defendant LoanCare spills much ink in its motion to dismiss averring that the loan modification agreement was not a valid and enforceable contract. Even assuming that the agreement was an enforceable contract, *see e.g.*, *Khan v. OneWest Bank*, No. 16-CV-8074, 2017 WL 1344535 (N.D. Ill. Apr. 12, 2017) (finding that, though a permanent modification was never executed, a loan modification agreement was itself a binding contract), the plaintiffs' eviction would still be lawful under its terms.

    Contrary to the plaintiffs' assertions, the loan modification agreement provided no right to continued possession of the property. Nowhere in the agreement are the plaintiffs told that their eviction would be forestalled or their foreclosure vacated, and they do not represent that they were ever told as much in various telephone conversations with LoanCare representatives. To the contrary, the materials that the plaintiffs received from LoanCare state that foreclosure may proceed notwithstanding the agreement,[3] and in this case the plaintiffs' mortgage had already been

---

[3] The Borrower Response Package confirmation that Ms. Banks received dated May 15, 2017 states: "Even if we are able to approve you for a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale may not halt the scheduled sale." First Am. Compl. Ex. A at 1, ECF No. 6. Similarly, the FHA Trial Payment Plan Agreement states: "Our acceptance and posting of your payment during the Trial Period Plan will not be deemed a waiver of the acceleration of your loan and related activities, including the right to resume or continue foreclosure, and shall not constitute a cure of your mortgage default unless such payments are sufficient to completely cure the default." *Id.* Ex. B at 2. Even LoanCare's alleged statement after the eviction that it would not honor the

foreclosed upon. While offering a modification for a loan that no longer exists is perplexing—LoanCare refers to the provision of these documents to Ms. Banks as "a mistake," Mem. Supp. Mot. Dismiss at 3, ECF No. 25—the injury complained of here, the eviction, was nevertheless proper. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, but here (so far as the Amended Complaint alleges) the eviction was carried out pursuant to a valid judicial process separate and apart from LoanCare's proffer of a loan modification agreement. Plaintiffs' misunderstanding of the loan modification agreement does not render an otherwise lawful eviction wrongful.

Put another way, the plaintiffs have not demonstrated that the loan modification agreement proximately caused the damages arising from the eviction, because the eviction would have occurred even in the absence of the loan modification agreement. *Cf. Bastian v. Petren Res. Corp.*, 892 F.2d 680, 684-85 (7th Cir. 1990) (if same losses would have occurred despite fraud, the claim fails to establish loss causation). Though the plaintiffs allege that defendant LoanCare's conduct was unfair or deceptive in entering into a loan modification program for a loan that had already been foreclosed upon, the only damages traceable to breach of the loan modification agreement would be payments the plaintiffs made pursuant to that agreement, not the losses caused by an eviction that was lawful notwithstanding the loan modification agreement. The plaintiffs do not complain about the three payments that they made under the modified payment plan, however; their complaint is that they relied on the modification agreement as an indication that they had a current interest in the home and would not be evicted from it, *see* First Am. Compl. ¶ 28, ECF No.

---

loan modification agreement, *id.* ¶ 42, does not contravene the terms of the agreement, as it permits LoanCare to "revoke this offer or terminate the plan following your acceptance if we learn of information that would make you ineligible for the Trial Payment Plan." *Id.* Ex. B at 2.

6 ("Massie reentered the Property, believing he and his family still had rights and interest in the Property pursuant to the Agreement and considering at that time two TPP payments were made."). Being misled about the likelihood of an eviction did not cause the damages about which the plaintiffs complain; being evicted caused those damages. And because the eviction itself was not precluded by the loan modification agreement, the plaintiffs have no claim to recover from LoanCare arising directly from its actions in enforcing its right to possession of the property.

The Court comes to a similar conclusion with respect to the Cook County Sheriff's eviction of the plaintiffs on August 10. It might be a problem if, as plaintiffs suggest, the possessory order authorizing the eviction had expired and was therefore invalid.[4] In its motion to dismiss, however, Defendant LoanCare provides clear evidence that the possessory order was twice extended pursuant to a court order and would have been valid at the operative times.[5] *See* Mem. Supp. LoanCare's Mot. Dismiss Ex. E, ECF No. 25. Defendant LoanCare also provides evidence that the plaintiffs were provided notice of a hearing on a motion to extend the possessory order, *see id.* Ex. E at 3-4. Accordingly, the plaintiffs have failed to allege that their eviction on August 10 was somehow invalid or in violation of law.

As to the plaintiffs' eviction on August 16, the Court's analysis is similar. Based on the documentation provided in the defendants' motions to dismiss, the Richton Park police evicted the

---

[4] That would arguably make the Sheriff's action unlawful, but the Sheriff is not a defendant. Whether First Allegiance would be liable for its actions had the eviction order expired prior to those actions is another question, but one that it is not necessary to address because, as discussed immediately below, the record on this motion establishes that the order authorizing the Sheriff to take possession of the property was valid.

[5] As noted, in evaluating a motion to dismiss the Court may consider documents that are both referred to in the complaint and are central to its claims, *Levenstein*, 164 F.3d at 347, and so the Court takes into account the copies of the extended possessory order provided by Defendant LoanCare. One Order extends the enforcement period to August 11, 2017, and the other further extends it until November 24, 2017. Mem. Supp. LoanCare's Mot. Dismiss Ex. E at 1-2, ECF No. 25.

plaintiffs based on a valid possessory order after a foreclosure proceeding and judicial sale, *see* Order Approving Report of Sale and Distribution, Confirming Sale and Order of Possession, Mem. Supp. LoanCare's Mot. Dismiss Ex. D, ECF No. 25. Eviction pursuant to a valid, lawful order does not rise to the level of extreme and outrageous conduct "beyond all bounds of decency" required for an IIED claim. *Compare Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006) (rejecting IIED claim premised on lawful eviction), *with Zoretic v. Darge*, No. 10-CV-6011, 2011 WL 832236, at *2 (N.D. Ill. Mar. 2, 2011) (holding that an IIED claim survived a motion for dismiss where plaintiffs alleged that the defendants caused the Sheriff's Department to evict the plaintiff knowing that they did ***not*** have legal authority to do so and that their actions would cause severe emotional distress). All told, because the injury complained of, the eviction, was lawful, the plaintiffs' various theories fail to state a claim against LoanCare upon which relief can be granted.

The lawfulness of the eviction, however, does not itself defeat the plaintiffs' claims for missing and damaged personal property as a result of their eviction. Their allegations give rise to a plausible claim, particularly as they aver that they were present the entire time their property was being removed and soon moved their property to a secured storage unit, *see* First Am. Compl. ¶ 36, ECF No. 6, giving rise to the suspicion that these items were removed by one or more persons who assisted with the eviction. As it stands, however, the plaintiffs have not alleged facts to attribute the potential conversion to LoanCare or to First Allegiance by demonstrating an agency relationship between the defendants and those—Maurice Johnson or other individuals—who removed the plaintiffs' personal property from the residence. "Generally, a person injured by the tortious act of another must seek relief from the person who caused the injury. The doctrine of *respondeat superior*, which provides that a principal may be liable for the tortious actions of its

8

agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to this general rule. [*Respondeat*] *superior* cannot typically be used to impose on a 'principal' vicarious liability for the tortious acts of its independent contractor." *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 814 (N.D. Ill. 2014) (citations omitted).

Whether an entity is an agent or an independent contractor "turns primarily on the level of control that the alleged agent retains over the performance of its assigned work." *Id.* The primary test of whether an agency relationship exists "is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (citations and internal quotation marks omitted). "In a principal-agent relationship, the principal retains the right to control the manner and method in which the work is carried out by the agent. By contrast, an independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified * * * [and] without his being subject to the orders of the person for whom the work is done in respect to the details of the work." *Jackson*, 62 F. Supp. 3d at 814 (cleaned up). "Other factors that bear on the question of whether one is properly considered an agent or an independent contractor include (1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done." *Id.* (citations and internal quotation marks omitted).

The allegations of the Amended Complaint speak to none of these factors. The Amended Complaint alleges only that: six people removed the plaintiffs' furnishings from the house to the front yard and garage, damaging them in the process. The Amended Complaint alleges that these

individuals were from First Allegiance, but acknowledges that when the plaintiffs called First Allegiance after discovering that money, jewelry, and other items were missing, someone from First Allegiance told them that the company had hired "Maurice Johnson" to carry out the eviction and knew nothing else about the individuals who were present at the property. Mr. Johnson is not further identified or described, so the Amended Complaint provides no basis to infer that he or the other individuals who were on-site during the August 16 eviction were acting as agents of First Allegiance or LoanCare. The plaintiffs effectively concede as much in their response by acknowledging that they do not know whether even Maurice Johnson (much less anyone else) "is an employee, agent, [or] independent contractor" and "do not know the extent of control Allegiance has over Johnson's work." Pls.' Resp. to First Allegiance's Mot. Dismiss at 4, ECF No. 43. That concession, which is consistent with the absence of allegations that might plausibly suggest that Mr. Johnson was an agent of First Allegiance or LoanCare, concedes that the Amended Complaint does not state a plausible claim to relief against either defendant based on the loss or damage of their personal property during the course of the eviction.

      Finally, the plaintiffs also allege racial and gender discrimination in violation of the FHA, but in a conclusory fashion that is insufficient to support a claim upon which relief can be granted. The plaintiffs recognize their misstep in failing to plead either disparate impact or disparate treatment and request leave to amend their complaint, see Pls.' Resp. to LoanCare's Mot. Dismiss at 11, ECF No. 44. The deficiencies in the Amended Complaint go beyond the type of discrimination alleged, however, as the plaintiffs do not plead any facts indicating that actions were taken against them based on race or sex. The plaintiffs generally allude to "similarly situated white borrowers in areas and communities that are predominantly white" without alleging specific facts to state a claim of selective loan modification based on race. First Am. Compl. Count IV

¶ 10. The plaintiffs' complaint is similarly conclusory in its statement that they were "publicly shamed and embarrassed in front of their neighbors during not only the eviction event but through the arrest and harassment of Massie, all due to their race and Banks' gender," *id.* Count IV ¶ 14. This type of pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The Amended Complaint does not adequately state a claim for racial or gender discrimination under the FHA.

\* \* \* \* \*

For the foregoing reasons, defendants LoanCare and First Allegiance's motions to dismiss are granted. To the extent that any claim seeks damages caused by the plaintiffs' eviction from the property itself (as distinguished from damages arising from the manner in which the eviction was carried out), they are dismissed with prejudice. Otherwise, the dismissal is without prejudice. Any amended complaint must be filed by October 28, 2019.

Date: October 7, 2019

John J. Tharp, Jr.
United States District Judge